# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
|    Plaintiff, | ) ) |
| v. | ) ) |
| DEFENDER ASSOCIATION OF PHILADELPHIA | ) ) ) ) |
|    Defendant. | ) ) ) |

CIVIL ACTION NO.

**COMPLAINT**
**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Megan Perez ("Perez"), who was adversely affected by such practices. As alleged with greater specificity below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that the Defender Association of Philadelphia ("Defendant"), engaged in disability discrimination against Perez when it failed to provide her with a reasonable accommodation for her disability (major depressive disorder and post-traumatic stress disorder) and terminated her employment in violation of the ADA.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a U.S. non-profit corporation doing business in the Commonwealth of Pennsylvania and Philadelphia County, Pennsylvania, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Perez filed a charge of discrimination with the Commission alleging violations of the ADA by her former employer, Defendant.

7. On August 7, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices identified in the Letter of Determination and provide appropriate relief.

8. The Commission subsequently engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On October 9, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS

### Perez's Positive Employment History With Defendant

12. Defendant provides legal defense for indigent adult and juvenile defendants on a court-appointed basis in Philadelphia, Pennsylvania.

13. Defendant employs over 200 attorneys in numerous units/divisions.

14. From Summer 2006 through August 2007, Perez interned at Defendant.

15. In September 2007, Defendant hired Perez as a full-time staff attorney.

16. From September 2007 to in or around July 2012, during Perez's employment, she rotated through the majority of Defendant's units/divisions including (a) client interviewing (both in office and in prison); (b) preliminary arraignments; (c) preliminary hearings; (d) bench warrant hearings; (e) misdemeanor trials; (f) motions court (*e.g.*, bail petitions, return of property, *habeas corpus* hearings, *writ of certiorari* hearings, and extradition hearings); (g) juvenile; (h) felony waiver; and (i) major trial.

17. In July 2012, Defendant promoted Perez to assistant supervisor of Defendant's Juvenile Special Cases section ("JSCS").

18. As an assistant supervisor of the JSCS, Perez, in addition to supervisory responsibilities, defended juveniles charged with sex-based criminal offenses.

19. In or about July 2013, Defendant promoted Perez to Supervisor of the JSCS.

### Defendant's Assignment of Perez to Sexually Violent Predator Unit

20. In or around June 2014, Defendant assigned Perez as a Sexually Violent Predator ("SVP") specialist.

21. Aware that Perez was uncomfortable with this assignment, her supervisor assured her that the SVP specialist assignment would last for only two years.

22. Perez's assignment as SVP specialist, however, extended to close to two and one-half years, until about November 2016.

23. Less than six months later, after completing another temporary assignment, around April 10, 2017, Defendant assigned Perez to supervise the JSCS, where she was again required to defend juveniles accused of sex-based criminal offenses.

### Perez's Disability and Medical Leave

24. Around July 2017, Perez began therapy sessions with a licensed clinical social worker (Perez's "therapist").

25. On July 28, 2017, after seeing her therapist, Perez took a leave of absence under the Family and Medical Leave Act ("FMLA").

26. During this time, Perez also began receiving short-term disability benefits.

27. On or around August 8, 2017, Perez was diagnosed with major depressive disorder ("MDD") and post-traumatic stress disorder ("PTSD").

28. Perez's MDD and PTSD symptoms were caused, in part, by her work as an SVP specialist and in the JSCS.

29. Perez's MDD and PTSD were mental/psychological impairments which substantially limited one or more of her major life activities and/or major bodily functions including, but not limited to, eating, sleeping, caring for herself, and interacting with others.

30. On or about September 11, 2017, Perez met with her then supervisors, Elton Anglada ("Anglada") and Lisa Campbell ("Campbell") and sought, pursuant to her therapist's recommendations, medical leave until January 2018, and upon her return, a transfer to a unit not involving sex-based criminal offenses.

31. At the September 11, 2017 meeting, Anglada and Campbell agreed to Perez's January 2018 return, and asked that she remain in the juvenile unit, but not the JSCS. Perez agreed to this assignment and stated that she was excited to return to the juvenile unit in January 2018.

32. On October 20, 2017, Perez's FMLA leave expired and she applied for, and received, long-term disability benefits.

33. On or about October 24, 2017, Perez's therapist provided Lincoln Financial Group, Defendant's employee long-term disability insurance provider, with a memorandum stating that Perez would be able to return to work in January 2018.

34. In the October 2017 memorandum, Perez's therapist also stated that Perez should not return to the JSCS or to any position involving sex-based criminal offenses.

Defendant Terminates Perez

35. On November 30, 2017, Perez had two telephone conversations initiated by Sherri Darden ("Darden") and Mark Sappir ("Sappir"), both Human Resource representatives for Defendant.

36. During the first call, Darden informed Perez that she was to be terminated because she was being placed on long-term disability and was not capable of working, such that Defendant

could no longer cover her under its malpractice insurance policy and was therefore obligated to terminate her employment.

37. Perez questioned this decision, specifically noting both her September 11, 2017 meeting with Anglada and Campbell, and her anticipated return in January 2018.

38. Perez also noted that the October 2017 memorandum indicated a January 2018 return to work.

39. Without indicating whether they had previously seen the October 2017 memorandum, Darden and Sappir asked Perez to provide them with a copy. Perez thereupon sent Darden and Sappir a copy of the October 2017 memorandum.

40. A few hours after the first call, Darden and Sappir called Perez again, reiterating that they were terminating Perez's employment, as they interpreted her therapist's recommendations as not containing a definitive return date. Darden and Sappir told Perez that her termination would be effective as of December 15, 2017.

41. On December 14, 2017, Darden sent Perez a letter stating that Perez was terminated as of December 15, 2017.

42. In deciding to terminate Perez, Darden and Sappir sought no additional information from Perez or her psychiatric counselor regarding her medical condition, her request to be assigned cases other than sex crimes, or her plans to return to work in January 2018 .

43. Prior to the beginning of her medical leave and throughout her employment with Defendant, Perez satisfactorily performed the essential functions of her job in the various roles/positions to which she was assigned.

44. Defendant employs a pool of attorneys who assist with matters when other attorneys are ill or when there is an emergency requiring an attorney to appear in court on short notice.

45. At all relevant times, Perez was an individual with a disability within the meaning of the ADA.

46. Perez was medically cleared to return to work as of January 2018.

47. Due both to the rotational nature of its work assignments, and its high turnover rate of attorneys, Defendant had numerous vacant attorney-level positions in, or within a reasonable time after, January 2018.

48. Perez could perform the essential functions of any attorney position at Defendant, except for defending individuals accused of sex-based criminal offenses.

49. Defendant never offered Perez a transfer or reassignment to a vacant position as a reasonable accommodation.

50. Upon learning about Perez's disability and her request for accommodation, Defendant did not engage in a good faith interactive process to determine whether a reasonable accommodation was available.

### **Disability Discrimination (Failure to Accommodate/Termination)**

51. Since at least August 2017, Defendant has engaged in unlawful employment practices in violation of Sections 102(A) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(A) and 12112(b)(5)(A), by failing to provide Perez with a reasonable accommodation for her disability and by terminating her on account of her disability.

52. As a direct and proximate result of this violation of her rights under the ADA, Perez has suffered damages in the form of past pecuniary losses. In addition, she has suffered emotional

pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

53. The unlawful employment practices complained of above were intentional.

54. The unlawful employment practices complained of above were done with malice or with reckless indifference to Perez's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to reasonably accommodate any individual with a disability, from engaging in any employment practice which discriminates on the basis of a disability, and retaliating against any individual for engaging in an activity protected under the ADA.

B. Order Defendant to institute and carry our policies, practices, and programs that provide equal employment opportunities for individuals with disabilities and which eradicates the effects of its past and present unlawful employment practices.

C. Order Defendant to implement non-discriminatory objectives, written policies and practices regarding the terms and conditions of employment and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not discriminate against any employee because of a disability, including that it will comply with all aspects of the ADA.

D. Order Defendant to make Perez whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and reinstatement or front pay in lieu thereof, as well as compensation for past and future pecuniary losses resulting from the unlawful

employment practices described above, which were reasonably incurred as a result of Defendant's conduct, in amounts to be determined at trial.

E. Order Defendant to make Perez whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above including, but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Perez punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Supervisory Trial Attorney

/s/ Joshua E. Zugerman
JOSHUA E. ZUGERMAN
Trial Attorney
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107
Phone: (267) 589-9763
Fax: (215) 440-2848
joshua.zugerman@eeoc.gov
PA 205774

DATED: April 26, 2019                    ATTORNEYS FOR PLAINTIFF