IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    *Plaintiff,*<br><br>    v.<br><br>DEFENDER ASSOCIATION OF PHILADELPHIA,<br><br>    *Defendant.* | CIVIL ACTION NO. 19-1803 |

**MEMORANDUM**

**Rufe, J.**                                                                                                                            **October 3, 2019**

        Plaintiff Equal Employment Opportunity Commission ("EEOC") filed suit[1] against Defendant Defender Association of Philadelphia alleging that the Defender Association failed to provide Megan Perez with a reasonable accommodation for her disability and terminated her employment in violation of the Americans with Disabilities Act ("ADA").[2] The Defender Association has moved to dismiss the Complaint.[3] This motion will be denied.

    **I.**         **BACKGROUND**[4]

        The Defender Association provides legal defense for indigent juveniles and adult criminal defendants pursuant to appointment by the Pennsylvania state courts. In September 2007, the Defender Association hired Perez as a full-time staff attorney, and in July 2012, the Defender Association promoted Perez to Assistant Supervisor of the Juvenile Special Cases section ("JSCS") where her role was to defend juveniles accused of sex crimes. About a year later, the Defender Association promoted Perez to Supervisor of the JSCS. In June 2014, the

---

[1] *See* Compl. [Doc. No. 1].
[2] 42 U.S.C. § 12112.
[3] *See* Motion to Dismiss for Failure to State a Claim [Doc. No. 7].
[4] Unless otherwise stated, the background is drawn primarily from the Complaint and at this stage of the proceedings is presumed to be true.

Defender Association assigned Perez as a Sexually Violent Predator ("SVP") specialist. Knowing that Perez was uncomfortable with this assignment, her supervisor assured her that it would only last two years. However, it lasted until November 2016. After a temporary assignment, the Defender Association again assigned Perez to supervise the JSCS, where she was once again required to defend juveniles accused of sex-related crimes.

In July 2017, Perez began therapy sessions with a licensed clinical social worker, and later that month, Perez took a leave of absence under the FMLA. During this time, Perez also began receiving short-term disability benefits. In August 2017, Perez was diagnosed with major depressive disorder and post-traumatic stress disorder which were caused, in part, by her work as an SVP specialist and in the JSCS.

On September 11, 2017, Perez met with her then-supervisors Elton Anglada and Lisa Campbell and sought, pursuant to her therapist's recommendations, medical leave until January 2018, and upon her return, a transfer to a unit not involving sex-related criminal offenses. Anglada and Campbell agreed to Perez's proposed January 2018 return date, and asked that she remain in the juvenile unit, but not the JSCS. Perez agreed to this assignment and stated that she was excited to return to the juvenile unit in January 2018.

On October 20, 2017, Perez's FMLA leave expired and she applied for, and received, long-term disability benefits. On October 24, 2017, Perez's therapist prepared a memorandum ("Medical Memorandum"). In the "Recommendations going forward" section, Perez's therapist wrote:

> The plan is for Ms. Perez to return to her job in January 2018. I am unable to currently say at this time whether that is feasible, but if it is, I would recommend that she phase in part time as it has been very hard for her to tolerate discussions about work in our sessions, and the one time she went to the office, she had a panic attack and was unable to go into the building. I do not currently see that it would be wise or advisable for her to resume work in any capacity where she

needs to perform work in the previous role as related to working as a mitigation specialist or trainer working with the sex offender population. While Ms. Perez has a passion for social justice she and the Defender Association may be better served if she works in a less triggering unit at this organization.[5]

On November 30, 2017, Sherri Darden and Mark Sappir, both Human Resource representatives for the Defender Association, initiated two phone conversations with Perez. During the first call, Darden informed Perez that she was to be terminated because she was being placed on long-term disability and was not capable of working. Perez noted both her September 11, 2017 meeting with Anglada and Campbell, and her anticipated return in January 2018, as well as the Medical Memorandum indicating a January 2018 return to work. Darden and Sappir asked Perez to provide them with a copy of the Medical Memorandum. A few hours after the first call, Darden and Sappir called Perez again, reiterating that they were terminating Perez's employment, as they interpreted her therapist's recommendations as not containing a definitive return date.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[6] and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[7] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

---

[5] Exhibit A [Doc. No. 17] at 6.
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).
[7] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

fact) . . . ."[8] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[9]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[10] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[11] it "need not accept as true 'unsupported conclusions and unwarranted inferences,'"[12] or the plaintiff's "bald assertions" or "legal conclusions."[13]

### III.   DISCUSSION

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees."[14] This includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business."[15] To state a claim of disability discrimination, the plaintiff must

---

[8] *Twombly*, 550 U.S. at 555 (citations omitted).
[9] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558–59.
[10] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).
[11] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted).
[12] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).
[13] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).
[14] 42 U.S.C. § 12112(a).
[15] 42 U.S.C. § 12112(b)(5)(A). In its Memorandum of Law in Support of Defendant's Motion to Dismiss, the Defender Association mentions "hardship" three times in passing: 1) "An indefinite leave was not only a tremendous hardship to the Defender Association, but. . . ," *id.* at 5; 2) "Thus, because Ms. Perez's request for indefinite leave was not only a tremendous hardship to the Defender Association, but. . . ," *id.* at 6; and 3) "(and placed an undue hardship on the Defender Association)." *Id.* at 9. However, since the Defender Association provides no support for this allegation, the Court finds that it has no bearing on whether the Defender Association provided Perez with a reasonable accommodation at this stage.

allege that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination which in this context includes refusing to make reasonable accommodations for a plaintiff's disabilities."[16]

The Defender Association's Motion to Dismiss is based on two arguments: 1) that all reasonable requests for accommodation were granted; and 2) that Perez was not qualified to perform the essential functions of the job with or without a reasonable accommodation request.[17]

### A. Whether the Defender Association failed to make reasonable accommodations

The Defender Association argues that it provided Perez with every reasonable accommodation she requested including a leave of absence and both short-term and long-term disability benefits.[18] The Defender Association claims that the only accommodation request that it denied was Perez's request for indefinite leave which, it argues, is unreasonable as a matter of law.[19]

The Defender Association bases its claim that Perez asked for indefinite leave on the Medical Memorandum that she provided to them,[20] and argues that the Memorandum does not

---

[16] *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186–87 (3d Cir. 2009) (citations omitted).
[17] At this stage, the Defender Association does not dispute that Perez is a person with a disability within the meaning of the ADA. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss [Doc. No. 7] at 4.
[18] *See id.*
[19] *See id.*
[20] The EEOC concedes that the Complaint "does reference and, arguably, relies upon the Medical Memorandum in its Complaint" and that, therefore, the Court may consider it without converting the Motion into a motion for summary judgment. EEOC's Response in Opposition to Defendant's Motion to Dismiss [Doc. No. 16] at 6 n.1 (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The Defender Association also asks the Court to consider a November 2017 email between Perez and Darden arguing that "the EEOC indirectly references it in its Complaint." Defendant's Sur-Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss [Doc. No. 19] at 2–3. However, only a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines*, 281 F.3d at 388. Moreover, the November 2017 email is not even "indirectly referenced" in the Complaint. Therefore, the Court will not consider the November 2017 email in deciding this Motion.

"provide a definitive return-to-work date" or a "favorable prognosis" and is therefore a request for "indefinite leave" since the therapist was unsure whether it would be feasible for Perez to return in January 2018.[21] Therefore, the Defender Association contends that because Perez's request was for indefinite leave, and because indefinite leave is not a reasonable accommodation, EEOC's claims of failure to accommodate must be dismissed.

EEOC does not dispute that indefinite leave is not a reasonable accommodation.[22] Instead, EEOC disputes the Defender Association's characterization of Perez's request as a request for indefinite leave.[23] In response to the Defender Association's argument, EEOC explains that the "therapist envisioned Perez returning in January 2018, and included the hedging language solely because she did not want to rule out the possibility, however slight, that Perez may need additional time."[24]

Moreover, EEOC points to the allegations in the Complaint, accepted as true at this stage in the proceedings, that:

> (1) on September 11, 2017, Perez informed her supervisors that she would return in January 2018;
> (2) Perez's supervisors agreed to the January 2018 return date and agreed to transfer her to a position not involving sex-based criminal offenses;
> (3) Perez agreed to the new assignment and explicitly stated that she was excited to return in January 2018; and

---

[21] Memorandum of Law in Support of Defendant's Motion to Dismiss [Doc. No. 7] at 5. The Defender Association also argues here that the Medical Memorandum stated that "[t]his is a long term process and non linear." *Id.* (quoting Exhibit A [Doc. No. 17] at 6). However, that sentence was in the "Summary of work up to date" section and was referencing therapy to deal with Perez's past trauma—it was unrelated to when Perez would be able to return to work. *See* Exhibit A [Doc. No. 17] at 6. Similarly, the Defender Association argues that Perez's "therapist did not believe Plaintiff's return was possible" since she stated in the Medical Memorandum that "I do not currently see that it would be wise or advisable for her to resume work in any capacity where she needs to perform work in the previous role." Defendant's Sur-Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss [Doc. No. 19] at 2 (quoting Exhibit A [Doc. No. 17] at 6). However, as EEOC correctly explains, the "previous role" was specifically defending juvenile sex offenders but the Defender Association had already agreed to the reasonable accommodation of moving Perez out of that unit. *See* EEOC's Sur-Reply to Defendant's Reply to EEOC's Response in Opposition to Defendant's Motion to Dismiss [Doc. No. 21] at 2 (citing Am. Compl. at ¶¶ 30–31).
[22] *See* EEOC's Response in Opposition to Defendant's Motion to Dismiss [Doc. No. 16].
[23] *See id.* at 5–9.
[24] *See id.* at 7.

(4) on November 30, 2017, Perez informed Darden and Sappir that she would return in January 2018, slightly more than one month from the date of the call.[25]

EEOC argues that in "the context of Perez's consistent and clear representations of her January 2018 return, it is clear that she did not seek indefinite medical leave as a reasonable accommodation."[26]

As EEOC repeatedly explains, at this stage in the proceedings, the Court is required to "accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs."[27] The therapist's statement—that she was unable to say whether a return in January 2018 would be feasible—can, in a vacuum, reasonably be seen as either simply hedging on the plan for a January 2018 return, as EEOC argues, or as demonstrating that Perez's request was for an indefinite leave, as the Defender Association argues.[28] Viewed in the light most favorable to Perez, as it must be at this stage, the statement supports the allegation that Perez was planning to return to work in January 2018, and that the therapist was only sounding a note of caution. Perez herself alleges that she repeatedly assured the Defender Association that she would be returning to work in January 2018. Accordingly, Perez's accommodation request was not unreasonable as a matter of law.

### B. Whether Ms. Perez was a qualified individual under the ADA

As explained above, in an ADA case, the plaintiff must prove that she "is otherwise qualified to perform the essential functions of the job, with or without reasonable

---

[25] *See id.* at 6 (citing Am. Compl. at ¶¶ 30–31, 37).
[26] *See id.* at 7.
[27] *See* EEOC's Sur-Reply to Defendant's Reply to EEOC's Response in Opposition to Defendant's Motion to Dismiss [Doc. No. 21] at 1 (citing *U.S. Express Lines*, 281 F.3d at 388).
[28] The Defender Association's reliance on *Fogleman v. Greater Hazleton Health Alliance* for the proposition that Perez's failure to specify record evidence of a return-to-work date constitutes a request for indefinite leave is misplaced because in *Fogleman*, decided at summary judgment, there was "no evidence that permits any conclusion other than that the requested leave was for an indefinite and open-ended period of time." 122 F. App'x 581, 586 (3d Cir. 2004). Here, the allegations of the Complaint and Medical Memorandum do not compel a conclusion that Perez sought indefinite leave.

accommodations by the employer."[29] The Defender Association's argument that Perez is not a qualified individual under the ADA is predicated on its contention that she sought indefinite leave, and therefore, there was no reasonable accommodation that would allow her to perform the functions of her job.[30] Because, as explained above, the question of indefinite leave cannot be resolved in the absence of a developed record, whether Perez is a qualified individual under the ADA is not a basis for dismissal.

## IV. CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendant Defender Association will be **DENIED**. An order will be entered.

---

[29] *Hohider*, 574 F.3d at 186–87.
[30] Memorandum of Law in Support of Defendant's Motion to Dismiss [Doc. No. 7] at 7–9.